346 S.E.2d 289 (1986)
In re MANUS.
UNION COUNTY DEPARTMENT OF SOCIAL SERVICES, By and Through its Director, H. Gene HERRELL
v.
Teresa Georgette MULLIS and David Neal Manus.
No. 8620DC54.
Court of Appeals of North Carolina.
August 5, 1986.
*290 W. David McSheehan, Monroe, for respondent-appellant.
Griffin, Caldwell, Helder & Steelman by Jake C. Helder, and Harry B. Crow, Guardian Ad Litem, Monroe, for petitioner-appellee.
MARTIN, Judge.
Respondent Mullis contends that the trial court committed both procedural and substantive errors. She contends that the petition for termination of parental rights was invalid because it was not initiated by a person or agency authorized to maintain such actions and that the trial court erred in permitting an amendment to the petition without notice to her. She also contends that the court's findings of fact are not supported by competent evidence and are *291 insufficient to support its conclusions of law and its order terminating her parental rights. Her latter contentions have some merit and we find it necessary to vacate the order and remand the case.
We first consider respondent's procedural arguments. The petition as originally filed was captioned
In re: Manus, minor children
H. Gene Herrell, DIRECTOR OF THE UNION COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner,
vs.
TERESA GEORGETTE MULLIS and DAVID NEAL MANUS, Respondents.
By written motion dated 17 December 1984 and marked filed by the Clerk of Superior Court on 24 January 1985, petitioner moved to amend the caption "in order to conform the caption of the petition and action to G.S. 7A-289.24...." Although petitioner asserts in its brief that the motion was orally made and allowed at the beginning of the termination hearing, there is no indication of such action in the record before us. Nor is there any indication that the written motion was served on respondent. By order dated 24 January 1985, the motion was allowed and the caption of the petition was amended nunc pro tunc from the date of its original filing. Respondent contends that allowance of the motion without notice to her was prejudicial error.
G.S. 7A-289.25 provides that a petition for termination of parental rights "shall be entitled `In re (Last name of child), a minor child'...." The petition in this action was so captioned. The balance of the caption, naming petitioner and respondents, was not required by the statute and we consider it surplusage. Therefore, the order permitting the caption to be amended resulted in no prejudice to respondent.
Respondent further contends, however, that the petition for termination of parental rights was invalid and should have been dismissed because it was filed by a party not authorized to maintain such an action. G.S. 7A-289.24 limits the persons or agencies who may petition for termination of parental rights. A county department of social services, to whom custody of a child has been given by court order, has standing to maintain such an action. G.S. 7A-289.24(3). G.S. 7A-289.25(2) provides that the petition must set forth "[t]he name and address of the petitioner and facts sufficient to identify the petitioner as one entitled to petition under G.S. 7A-289.24."
The petition filed in the present case alleged:
2. That the name of the petitioner is H. Gene Herrell, and he is Director of the Union County Department of Social Services, and petitioner's address is Union County Department of Social Services, Union County Courthouse, Monroe, North Carolina 28110. Petitioner is entitled to petition for termination of parental rights under G.S. 7A-289.24(3) in that custody of the child Crystal Lynn Manus was surrendered to the Union County Department of Social Services by immediate custody order of Judge Donald R. Huffman dated January 21, 1983 ..., and the custody of Carolyn Irene Manus was surrendered to the Union County Department of Social Services by immediate custody order of Judge Kenneth W. Honeycutt dated August 25, 1983 ..., and the children have remained in the legal custody of the Union County Department of Social Services since those dates.
Respondent's argument is that the foregoing allegations establish that H. Gene Herrell, as an individual, is the petitioner and that the allegations do not establish that he is entitled, as an individual, to petition for termination of parental rights. We reject her argument. Even though the allegations of capacity may have been inartfully drafted, it is still readily apparent that Mr. Herrell did not petition for termination of respondents' parental rights in his capacity as an individual, but rather in his capacity as Director of DSS and, therefore, on behalf of DSS. The allegations are, in all respects, sufficient to establish that DSS is a party entitled to petition for *292 termination of respondents' parental rights in these children pursuant to G.S. 7A-289.24(3).
Moreover, even if we were to decide that the allegations are insufficient to show that the petition was brought by DSS, the real party in interest pursuant to G.S. 7A-289.24(3), dismissal of the petition would not be warranted. G.S. 1A-1, Rule 17(a) provides, in part:
No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
Rule 17(a) deals not only with real party in interest questions, but also with questions relating to capacity to maintain an action. Burcl v. N.C. Baptist Hospital, Inc., 306 N.C. 214, 293 S.E.2d 85 (1982). While this Court has held that the Rules of Civil Procedure are not superimposed upon the procedures set forth by statute for termination of parental rights, In re Clark, 76 N.C. App. 83, 332 S.E.2d 196 (1985); In re Peirce, 53 N.C.App. 373, 281 S.E.2d 198 (1981); In re Allen, 58 N.C.App. 322, 293 S.E.2d 607 (1982); it has also said that the Rules are not to be ignored. Clark, Allen. Indeed, each of the cited cases involved application of the Rules of Civil Procedure in addressing errors assigned to termination proceedings. Clark, supra, (service of process under Rule 4j); Allen, supra (Entry of written order proper under Rule 58); Peirce, supra (judgment properly corrected under Rule 60(a)).
The record does not reflect that respondents raised any question in the trial court with respect to Mr. Herrell's capacity to petition as director of DSS for termination of their parental rights. The petition provided respondents with full notice of the transactions and occurrences upon which the petition for termination was based. Because, for reasons hereinafter stated, we must vacate the order entered by the trial court and remand this case for further proceedings, we specifically hold that respondents are not entitled to a dismissal of the petition by reason of the erroneous designation of Mr. Herrell as petitioner. They can in no way be prejudiced by permitting DSS to ratify the petition and be substituted as petitioner.
We turn now to a consideration of respondent Mullis' substantive arguments. The petition sought to terminate respondents' parental rights upon two grounds: (1) that the minor children were neglected, (2) that neither respondent had paid a reasonable portion of the cost of support of the children while in DSS custody. The trial court, in its order terminating respondents' parental rights, found the following facts pertinent to those allegations:
"8. That the Court takes judicial notice of the previous orders entered in this case pertaining to the neglect of the minor children dated January 11, 1983; January 25, 1983; February 7, 1983; and January 12, 1984.
9. The Court also finds that Crystal Lynn Manus has been left in the care of her maternal grandmother, Dorothy Mullis, on various occasions when the father was drinking, and the mother would leave the child in the care of the maternal grandmother for indeterminate periods of time while she attempted to find the father. During these periods, the mother often left no money for food, Pampers, or other necessities nor made provision for these necessities for the minor child, Crystal. The maternal grandmother ultimately told the respondent-mother that she could no longer care for the children under these conditions.
....
11. That the children have had one extended visit with their parents over the 1983 Christmas holiday, and at the beginning of the visit, the mother was advised that Crystal had been exposed to chicken pox and to watch for symptoms of chicken *293 pox in case Crystal had contracted the disease. At the termination of the visit, the mother advised the foster mother that Crystal was fine and exhibited no symptoms of the disease, and upon return of the child to the foster mother, the foster mother determined that the child had a fever and had evidence of chicken pox over a large part of her body and was exhausted when returned to the foster parent. Also during this visit, Carolyn had a fever when she was returned to the foster parent, and of the two medications which were given by the foster parent to the respondent-mother at the beginning of the visit, no medication had been given out of one bottle, and only a small amount was apparently used out of the second bottle. Specific instructions were given to the mother regarding dosage and use of the medication.
12. That during the time that these children have been in the custody of the Union County Department of Social Services, the parents have not maintained contact with the Department of Social Services on a regular basis and have not maintained permanent living arrangements over a large part of the time. During the period of time that the children have been in the custody of the Union County Department of Social Services, both parents have been able-bodied and able to work except for the period of time that the mother was pregnant with Carolyn.
13. The respondent-father has been working for Bill Hefner Construction Company for the last three months doing remodeling work, making approximately $8.00 per hour and averaging 40 hours per week. Prior to that, he worked for Metric Construction Company for approximately four months, averaging approximately $8.00 an hour and working approximately 40 hours per week. Prior to that, he worked for Price-Mullis for approximately one year and averaged approximately $100.00 per week. He has been regularly employed since January of 1983 and has had an automobile all during this period of time, with the exception of the last month or so when the automobile incurred mechanical problems. The respondent-father's living expenses have been for rent which is currently $340.00 per month and food and clothing for himself and Teresa Georgette Mullis. He has two other children whom he does not support on a regular basis. He has given $100.00 to his son recently to repair a car and $100.00 each to two other minor children. He has visited with Crystal and Carolyn twice since June of 1984 and has not contacted the Union County Department of Social Services at all nor kept them informed of his whereabouts as provided for in the parent-agency agreements.
14. Respondent-mother has been working off and on since the birth of Carolyn Irene Manus on June 13, 1983. She has paid a total of $10.00 child support since the children have been in foster care and states that she does not feel that she should have to support her children unless they are in her care. She has never voiced a similar objection to the Union County Department of Social Services staff worker prior to her testimony in court. She currently works for David Manus in conjunction with his employment with Bill Hefner Construction Company. Prior to that, she worked with Westbury Knitting Mills during the summer of 1984, and Johnston Spinning Mills for two to two and a half months prior to that. Before her employment with Johnston Spinning Mills, she worked for a few days with S & F Knitting shortly after the birth of the minor child, Carolyn Irene Manus. She has visited with her children approximately six to seven times since June of 1984. She has not kept the Union County Department of Social Services staff apprised of her residence, and they have been unable to locate her at various periods of time.
15. The father has paid a total of $1,225.00 in support for the minor children since April 19, 1984, under the court-ordered support of $50.00 a week for Crystal Manus. Prior to April of 1984, he had paid a total of $475.00 in support for Crystal Lynn Manus since October 19, 1983. He has made no support payments which have been attributable directly to Carolyn Irene *294 Manus, and all support payments made to the Union County Clerk of Superior Court's Office have been directed to Crystal Lynn Manus per a court order entered in Union County Criminal Court.
16. The reasonable cost of care of each of the minor children is between $200.00 and $250.00 per month for food, clothing, and shelter.
17. The respondent-parents have from time to time entered into various parent-agency agreements with the Union County Department of Social Services, all of which have generally provided for suitable housing for the children, maintaining employment, paying reasonable support for the children, and reasonable visitation for the children. The parents have been apprised of their support obligation and have failed to meet their legal obligation of support for the minor children."
Based on these findings, the trial court concluded that respondents "have neglected" Crystal and Carolyn, and that respondents failed to pay a reasonable portion of the cost of care of the children while in DSS custody.
G.S. 7A-289.32 provides for the termination of parental rights if:
(2) The parent has abused or neglected the child. The child shall be deemed to be ... neglected if the court finds the child to be ... a neglected child within the meaning of G.S. 7A-517(21).
....
(4) The child has been placed in the custody of a county department of social services ... and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.
A neglected child is one who "does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law." G.S. 7A-517(21). Respondent Mullis contends that the findings do not support the trial court's conclusion that Crystal and Carolyn were neglected children within the meaning of G.S. 7A-289.32 and 7A-517(21). We agree.
Our Supreme Court has held that "evidence of neglect by a parent prior to losing custody of a childincluding an adjudication of such neglectis admissible in subsequent proceedings to terminate parental rights." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). However, "termination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer exist." Id. at 714, 319 S.E.2d at 231-32. "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." Id. at 715, 319 S.E.2d at 232 (emphasis original). This Court has held that "[t]he key to a valid termination of parental rights on neglect grounds where a prior adjudication of neglect is considered is that the court must make an independent determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing." In re McDonald, 72 N.C.App. 234, 241, 324 S.E.2d 847, 851 (1984) disc. rev. denied, 314 N.C. 115, 332 S.E.2d 490 (1985) (emphasis added).
In the present case, the trial court's Finding of Fact No. 9 is based upon evidence of neglect which occurred before respondent Mullis lost custody of Crystal. The only other findings with respect to respondent Mullis' neglect of either child are contained in Findings of Fact Nos. 8 and 11 and are based upon events which occurred more than a year before the termination hearing. Although the evidence is certainly relevant to the issue of neglect, it is insufficient, without more, to support termination on that ground. "Both the existence of the condition of neglect and its degree are by nature subject to change." In re Ballard, supra, 311 N.C. at 715, 319 S.E.2d at 232. Thus, the trial court must consider any evidence of a change in conditions and determine *295 whether the prior neglect still exists or is likely to recur. Id.
Petitioner argues that respondents have the burden of showing a change in conditions and that respondent Mullis came forward with no evidence that the previous conditions had improved. We disagree with both arguments. "The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists at the time of the termination proceeding." Id. at 716, 319 S.E.2d at 232. In the present case, respondent Mullis offered evidence tending to show that she was attempting to improve the conditions which had led to removal of her children and that she was making some progress in doing so. Petitioner offered some evidence to the contrary. From our review of the order, however, it is apparent that the trial court based its conclusion of neglect on its findings relative to past conditions and made no determination resolving the conflicts in the evidence as to whether conditions existing at the time of the hearing were indicative of a probability of continued neglect or whether the previous neglect had ameliorated. For that reason, we hold that the trial court found insufficient facts to support its conclusion that these minor children are neglected children and its order terminating respondent Mullis' parental rights on that basis.
Respondent Mullis' parental rights were also terminated upon the additional ground, provided by G.S. 7A-289.32(4), that she had failed to pay a reasonable portion of the cost of their care while they were in DSS custody. The trial court made a finding as to the reasonable cost of each child's care, but made no finding as to what portion of that cost was a reasonable amount for respondent Mullis to pay. "A parent's ability to pay is the controlling characteristic of what is a `reasonable portion' of cost of foster care for the child which the parent must pay. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay." In re Clark, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981). Although the court found that respondent Mullis had worked "off and on" since July 1983, there were no findings with respect to her ability to pay. The failure of the trial court to make the requisite findings makes it necessary that we vacate the action of the trial court terminating respondent Mullis' parental rights on this ground also. In re Ballard, supra.
The order of the trial court terminating the parental rights of respondent Teresa Georgette Mullis is vacated and this cause is remanded to the District Court of Union County for further proceedings not inconsistent with this opinion.
Vacated and remanded.
PHILLIPS and PARKER, JJ., concur.