An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1362

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

IN RE:

S.M.W.                                    Pasquotank County
                                          No.  13 JT 17


Appeal by Respondent-Father from Order entered 6 September 2013 by Judge C. Christopher Bean in Pasquotank County District Court. Heard in the Court of Appeals 5 May 2014.

> *Melissa L. Skinner for Petitioner-Mother.*
>
> *Mark Hayes for Respondent-Father.*

STEPHENS, Judge.

*Factual Background and Procedural History*

This case arises from the termination of Respondent-Father's parental rights to the minor child, Sam,[1] on the ground of neglect. Sam was born to Respondent-Father and Petitioner-Mother (collectively, "the parents") in April of 2010. The parents lived together for a short time after Sam's birth. They were never married. On 3 December 2010, Respondent-Father

_____

[1] A pseudonym is used to protect the juvenile's identity.

assaulted Petitioner-Mother and tried to prevent her from calling the police. As a result, Petitioner-Mother obtained a domestic violence protective order ("DVPO") against Respondent-Father and an order giving her temporary custody of Sam. The DVPO required Respondent-Father not to have any contact with Petitioner-Mother except "by email or text message and only regarding the health, safety, welfare, or visitation of [Sam]." The temporary custody order provided that Respondent-Father would have supervised visitation with Sam every Saturday from 10:00 a.m. to 6:00 p.m., with supervision provided by Sam's maternal grandmother. Petitioner-Mother was ordered not to be present for Respondent-Father's visits with Sam.

During a visit on 14 May 2011, the grandmother noticed that Respondent-Father's eyes were bloodshot and that his speech was "odd." On 26 May 2011, Petitioner-Mother filed a complaint seeking physical and legal custody of Sam and the cessation of visitation until Respondent-Father obtained psychological and drug assessments and followed any recommended treatment. After an entry of default on the custody complaint on 19 July 2011, the matter was set for hearing on 7 December 2011. On 12 August 2011, Respondent-Father attempted to attend a Saturday visit with Sam, but saw that Petitioner-Mother's car was parked at the

grandmother's home. Respondent-Father contacted the sheriff's office and was arrested for violating the DVPO. Petitioner-Mother renewed the DVPO on 7 December 2011 and was awarded permanent custody of Sam in an order entered 4 January 2012. The custody order provided that contact between Respondent-Father and Sam would be at Petitioner-Mother's discretion, but that Respondent-Father could contact the grandmother, or any other person designated by Petitioner-Mother, "to inquire as to [Sam's] welfare and well-being." Respondent-Father was not present for the hearing. The record before this Court contains no indication that Respondent-Father appealed the custody order.

On 26 March 2013, Petitioner-Mother filed a petition to terminate Respondent-Father's parental rights. Petitioner-Mother alleged that Respondent-Father had neglected and willfully abandoned Sam. The matter came on for hearing on 9 July 2013, and the trial court entered an order terminating Respondent-Father's parental rights on 6 September 2013. Therein, the trial court found that Respondent-Father had failed to provide proper care, supervision, or discipline for Sam and failed to provide financial support. Therefore, the court concluded that Respondent-Father neglected Sam as defined by N.C. Gen. Stat. §

7B-1111(a)(1) (2013) and that it was likely such neglect would continue. Respondent-Father appeals.

*Discussion*

In his sole argument on appeal, Respondent-Father contends the trial court erred by concluding that the evidence supported terminating his parental rights on the ground that he neglected Sam. We disagree.

At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists. N.C. Gen. Stat. § 7B-1109(f) (2013); *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001). A finding of one statutory ground is sufficient to support the termination of parental rights. *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).

"When the trial court is the trier of fact, the court is empowered to assign weight to the evidence presented at the

trial as it deems appropriate." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996). "[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them." *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (citation and internal quotation marks omitted).

In pertinent part, a neglected juvenile is defined as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . ." N.C. Gen. Stat. § 7B-101(15) (2013); *see also* N.C. Gen. Stat. § 7B-1111(a)(1). "In determining whether neglect has occurred, the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that exists in the parental relationship." *In re Yocum*, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 (citation, internal quotation marks, and brackets omitted), *affirmed per curiam*, 357 N.C. 568, 597 S.E.2d 674 (2003).

"Neglect must exist at the time of the termination hearing[.]" *In re C.W.*, 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007). However, where "the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and

that the parent is likely to neglect the child in the future."

*Id.* (citation omitted). In such cases,

> [o]ur Supreme Court has held that evidence of neglect by a parent prior to losing custody of a child — including an adjudication of such neglect — is admissible in subsequent proceedings to terminate parental rights. However, termination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer exist. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*.

*In re Manus*, 82 N.C. App. 340, 348, 346 S.E.2d 289, 294 (1986) (citations and internal quotation marks omitted; emphasis in original).

In this case, the trial court found the following relevant facts:

> 17. Respondent[-Father] last visited with [Sam] on May 14, 2011 at [the grandmother's] residence.
>
> . . .
>
> 19. [The grandmother] . . . was concerned about Respondent[-Father]'s behavior and actions while Respondent[-Father] was at her house. [She] testified that the visits between Respondent[-Father] and [Sam] were awkward.
>
> . . .
>
> 21. Respondent[-Father] arrived at [the

maternal grandparents'] residence on August 12, 2011. Respondent[-Father] called law enforcement to the residence as Petitioner[-Mother]'s car was at the residence. Respondent[-Father] was arrested . . . . Respondent[-Father] did not return to the residence after that date because he believed he would be arrested for violating the [DVPO].

. . .

23. Respondent[-Father] has not given Petitioner[-Mother] any financial support for [Sam] since 2011. The last item Respondent[-Father] gave to [Sam] was a Christmas gift in January 2011. Respondent[-Father] has not acknowledged [Sam's] birthday or holidays since January 2011.

24. In May 2011, Respondent[-Father] called and texted Petitioner[-Mother] but none of the telephone calls or text messages had anything to do [with Sam] and Respondent[-Father] did not inquire about [Sam].

25. [The grandparents] continue to reside at the same residence that the visitations took place between Respondent[-Father] and [Sam] and their telephone numbers remained the same through the hearing date.

. . .

27. Respondent[-Father] has not attempted any contact with [Sam] for over 2 ½ years and, during this time, Respondent[-Father] has not mailed any cards or sent presents to [Sam].

28. From May 2011 to the present date, Respondent[-Father] has not made any efforts

to file any motions to modify the current child custody order.

29. Nothing has prohibited Respondent[-Father] from sending cards, gifts, financial support[,] or contacting Petitioner[-Mother] or [the grandparents] to inquire about [Sam]'s welfare.

. . .

31. Respondent[-Father] has another son . . . who is eleven years old and with whom he visits and pays child support.

32. Respondent[-Father] is employed with his father's business and works with his father. Respondent[-Father] works with his father when he [is] not incarcerated. Respondent[-Father] had the ability to financially support [Sam] and did not support him.

33. Respondent[-Father]'s failure to perform the natural and legal parental obligations of care and support and Respondent[-Father]'s withholding of his love, presence, care[,] and maintenance have been willful.

34. Respondent[-Father] has not shown any likelihood that his behavior would change and, instead, the Court finds that . . . Respondent[-Father]'s failure to perform any natural and legal parental obligations of care and support towards [Sam] would continue in the future.

On appeal, Respondent-Father contests the validity of findings 19, 27, 29, 32, and 33 as not supported by the evidence.[2] We

---

[2] In his brief, Respondent-Father erroneously labels findings of

agree in part with Respondent-Father's argument as it relates to finding 27 and disagree as to the remaining findings.

First, Respondent-Father asserts that finding 19 is not supported by the evidence because there was no awkwardness between Respondent-Father and his infant child, Sam, just awkwardness between Respondent-Father and the grandparents. To the extent that "awkwardness" could possibly be relevant to an adjudication of neglect,[3] we hold that the undisputed fact that the interaction between Respondent-Father and the grandparents was "awkward" is sufficient to support finding 19.

Second, Respondent-Father asserts that finding 27 is not supported by the evidence because he actually visited with Sam in May of 2011 and "attempted" to visit him in August of 2011, less than 2 ½ years before the neglect hearing. This is correct. Respondent-Father's 12 August 2011 attempted visit, which resulted in his arrest, occurred approximately one year and eleven months before the 9 July 2013 hearing on the termination of his parental rights. Therefore, finding 27 is not supported by clear and convincing evidence to the extent that it implies Respondent-Father failed to attempt *physical* contact with Sam in

fact 29 and 33 as "#33" and "#30," respectively. The substance of his argument makes it clear, however, that he is actually referring to findings 29 and 33, in that order.
[3] We do not assert that it is.

more than 2 ½ years. The remainder of the finding, which relates to Respondent-Father's failure to attempt other forms of contact, is supported by undisputed evidence.

Third, Respondent-Father asserts that finding 29 is unsupported by the evidence because it fails to acknowledge that: (a) Petitioner-Mother prosecuted Respondent-Father for sending a text message asking "more or less about what [she] was doing" and (b) the custody order explicitly prohibited Respondent-Father from sending cards or gifts for Sam to Petitioner-Mother. This is inapposite. Finding 29 relates to Respondent-Father's decision to refrain from taking steps to ensure *Sam's* welfare or inquiring about *Sam*. Neither the DVPO nor the custody order prohibited Respondent-Father from sending cards or gifts to Sam, and both orders explicitly stated that Respondent-Father was allowed to make contact in order to inquire about Sam's welfare. Therefore, Defendant's argument is overruled as it relates to finding 29.

Fourth, Respondent-Father asserts that finding 32 is not supported by the evidence because "no evidence was presented about what sort of income [Respondent-Father] earned and whether that [income] provided him with anything beyond the basic

necessities."[4] This is incorrect. The evidence shows that Respondent-Father maintained employment when he was not incarcerated and provided child support for another child. This is clear and convincing evidence that "Respondent[-Father] had the ability to financially support [Sam] and did not support him."

Fifth, Respondent-Father asserts that finding 33 — that he "willfully" withheld love, presence, care, and maintenance — is not supported by the evidence because Respondent-Father believed further contact with Sam would result in imprisonment. This argument is without merit. As discussed above, both the DVPO and the custody order make clear that Respondent-Father could make contact to inquire about Sam's welfare, and neither order prohibited him from providing maintenance for Sam or expressing his love to Sam.

Respondent-Father does not contest the trial court's remaining findings of fact. Therefore, those findings are conclusive on appeal. *See In re Padgett*, 156 N.C. App. 644, 649, 577 S.E.2d 337, 340 (2003) (holding that the trial court's findings of fact in a neglect case were deemed supported by the evidence when the appellant did not argue otherwise). Thus,

---

[4] Respondent-Father does not contest the trial court's finding that he did not financially support Sam.

pursuant to the trial court's valid and relevant findings of fact, Respondent-Father voluntarily declined to: (1) provide financial support for Sam since 2011; (2) acknowledge Sam's birthday or holidays since January of 2011; (3) attempt any non-physical contact with Sam, *i.e.*, by electronic communication, mail, or other means, in more than 2 ½ years; (4) send cards or presents to Sam; or (5) make efforts to modify the current child custody order. These findings are sufficient to justify the trial court's adjudication of neglect, its conclusion that such neglect is likely to continue, and the termination of Respondent-Father's parental rights. *Compare In re Yocum*, 158 N.C. App. at 198, 580 S.E.2d at 399 (holding that clear and convincing evidence supported the trial court's finding of neglect in support of termination of the father's parental rights when the father never paid any child support, did not send the child a gift or any acknowledgment on her birthday, visited the child approximately five times, and failed to participate in a charitable prison program that would have provided gifts to children at no charge to the inmates), *with In re C.W.*, 182 N.C. App. at 214, 641 S.E.2d at 725 (holding that there was insufficient evidence to establish neglect and support a termination of parental rights when the father wrote to the

children; sent them birthday cards, holiday cards, and money; was initially unaware that the children had been placed in a care facility; testified that he spent time with and cared for the children before he was incarcerated; and was prohibited from having contact with the children upon release from prison). Accordingly, the trial court's order is

AFFIRMED.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).