IN THE MATTER OF: JOSEPH PETER (TREY) JURGA, III, Respondent

No. COA94-1439

(Filed 2 July 1996)

**Parent and Child § 96 (NCI4th)— termination of parental rights—unilateral declaration by parents insufficient— petition for appointment of guardian—dismissal proper**

Nothing in the statutorily established procedure for the termination of parental rights allows for a unilateral declaration of termination by the natural parents, and nothing in the record of this case indicated the existence of the statutorily prescribed two-stage proceeding at which the trial court, and not the parents, resolves the issues of whether grounds for termination exist and, if so, whether termination would indeed be in the best interests of the child; therefore, since the parental rights of the parents had not been terminated by their filing of a declaration of termination, they were still the natural guardians of the minor child, and a petition for adjudication of incompetence and application for appointment of guardian was properly dismissed for lack of jurisdiction.

**Am Jur 2d, Parent and Child § 7.**

**Validity of state statute providing for termination of parental rights. 22 ALR4th 774.**

Petitioners appeal from order filed 27 September 1994 by Judge Marcus L. Johnson in Gaston County Superior Court. Heard in the Court of Appeals 4 October 1995.

*Booth Harrington Johns & Campbell, L.L.P., by A. Frank Johns, for petitioners-appellants.*

*Henry L. Fowler, III for respondent-appellee.*

JOHN, Judge.

Petitioners contend the trial court erred by dismissing petitioners' application for appointment of a guardian of the person of the minor respondent (Trey). We disagree.

Pertinent facts and procedural information are as follows: Born in 1981, Trey has been afflicted since birth with severe mental retar-

dation, Beckwith-Weiderman Syndrome and chronic Ectopic Atrial Tachycarda. He remained in acute care hospital settings until 1992 when he was transferred to Holy Angels Services, Inc. (Holy Angels), a less restrictive intermediate care facility for mentally retarded patients located in Gaston County, North Carolina. Patient services at Holy Angels are provided through funding entitlements from state and federal agencies, North Carolina entitlements being available to a minor whose parent or legal guardian is domiciled in North Carolina.

Subsequent to Trey's placement at Holy Angels, however, his parents, Joseph Peter Jurga, Jr. and Melanie S. Jurga (the Jurgas), were relocated by his father's employer to a new job in South Carolina. The North Carolina entitlements were thus at risk. At the direction of the North Carolina Department of Public Instruction, the Jurgas arranged appointment of a North Carolina resident as Trey's "surrogate parent" for purposes of maintaining the child at Holy Angels with governmental benefits. However, the Jurgas were informed in 1994 that such appointment might be insufficient. The Jurgas were aware that Trey's removal from Holy Angels would severely and detrimentally impact his educational and functional progress, but considered their financial resources insufficient to continue the placement without governmental entitlements.

On 27 May 1994, the Jurgas each executed a "Declaration of Voluntary Termination of Parental Rights" (the Declaration), in which they proclaimed the following:

7. Based on the threatened loss of necessary residential services for Trey, and the potential for financial liability which we might be obligated, but unable to pay, we declare that our son is dependant and neglected as those words are defined in N.C. Gen. Stat. Sec. 7A-517(13) and (21) of the North Carolina Juvenile Code, and further that our son is educationally and residentially abandoned, and threatened with immediate potential loss of educational, habilitative and residential services necessary to ameliorate his agglomerate disabilities;

8. In order to insure that [our] son not suffer neglect, abandonment, loss of services and dependency, [we] hereby voluntarily declare termination of [our] parental rights as said termination is defined under Article 24B of N.C. Gen. Stat. Chp. 7A.

. . . .

**IN RE JURGA**

[123 N.C. App. 91 (1996)]

10. Having voluntarily terminated [our] parental rights, [we] request the Clerk to receive, and [we] support the application of Robert W. Simmons and Lee H. Simmons as co-guardians of the person of [our] son, Trey.

Thereafter, on 15 June 1994, petitioners Robert W. Simmons and Lee H. Simmons, relatives of Trey's mother and residents of North Carolina, filed a "Petition for Adjudication of Incompetence and Application For Appointment of Guardian" (the Petition) before the Clerk of Gaston County Superior Court (the Clerk), attaching the Declaration. That same day, the Clerk appointed J. Ben Morrow (Morrow) as Guardian *Ad Litem* for Trey. On Trey's behalf, Morrow answered the Petition 22 June 1994, seeking dismissal of the action on several grounds, including lack of jurisdiction.

Following a telephonic hearing conducted 24 June 1994, the Clerk entered an order of dismissal 28 June 1994 and taxed petitioners with costs and guardian *ad litem* fees. Pursuant to N.C.G.S. §§ 35A-1115 and 1-272, petitioners appealed the decision to the Superior Court and both parties filed briefs supporting their respective positions.

On 26 September 1994, the trial court entered an order dismissing the application and containing the following conclusion:

5. Neither the Clerk of Superior Court, the Court of original jurisdiction, nor this Court has jurisdiction to adjudicate the incompetence of a 13 year old minor who is alleged to be incompetent in the verified Petition filed in the matter and that the Petition of Robert W. Simmons and Lee H. Simmons should be dismissed.

From this order, petitioners filed a Notice of Appeal to this Court 12 October 1994.

---

Petitioners contend the Petition constituted an action falling under Subchapter II [Guardian and Ward], N.C. Gen. Stat. §§ 35A-1220 through 1228. Consequently, they continue, the definitions and jurisdictional requirements set out in the subchapter control and allow appointment of a guardian of the person for Trey by the Clerk. However, assuming *arguendo* the accuracy of these assertions, we nonetheless conclude the petition was properly dismissed on the basis of lack of jurisdiction.

The pertinent statutory provisions are as follows:

(12) The term "minor" means a person who is under the age of 18, is not married, and has not been legally emancipated.

. . . .

(a) The General Assembly of North Carolina recognizes that:

. . . .

(6) Minors, because they are legally incompetent to transact business or give consent for most purposes, need responsible, accountable adults to handle property or benefits to which they are entitled. Parents are the natural guardians of the person of their minor children, but unemancipated minors, when they do not have natural guardians, need some other responsible, accountable adult to be responsible for their personal welfare and for personal decision-making on their behalf.

. . . .

(b) The purposes of this Subchapter are:

(1) To establish standards and procedures for the appointment of guardians of the person, . . . and for minors who need guardians.

. . . .

(a) . . . . Clerks of superior court in their respective counties have original jurisdiction for the appointment of . . . general guardians for minors who have no natural guardian . . . .

N.C. Gen. Stat. §§ 35A-1202(12), 35A-1201(a)(6), 35A-1201(b)(1), and 35A-1203(a).

Under this subchapter, therefore, the Clerk may appoint a guardian only for a minor who has no parent or natural guardian. G.S. §§ 35A-1201(a)(6), 35A-1201(b)(1), and 35A-1203(a). Although Trey, 13 years old at the time of hearing, appears to meet the definitional requirements of G.S. § 35A-1202(12), we reject petitioners' contention that he is without a natural guardian as the result of filing by the Jurgas of the Declaration.

We have previously held "[t]he *exclusive* judicial procedure to be used in termination of parental rights cases is prescribed by the Legislature in N.C. Gen. Stat. § 7A-289.22, *et seq.* [Art. 24B]." *In re*

**IN RE JURGA**

[123 N.C. App. 91 (1996)]

*Curtis v. Curtis*, 104 N.C. App. 625, 626-27, 410 S.E.2d 917, 919 (1991) (emphasis added) (trial court erred by granting summary judgment in TPR action because "Article 24 of Chapter 7A does not provide for a summary proceeding . . . ."); *see also In re Pierce*, 53 N.C. App. 373, 380, 281 S.E.2d 198, 203 (1981) ("The statutorily established procedure for the termination of parental rights does not include the right to file a counterclaim, and we will not add that right by imputation.")

In G.S. § 7A-289.22, our General Assembly declared its purpose in enacting Article 24B was

> to provide judicial procedures for terminating the legal relationship between a child and his or her biological or legal parents when such parents have demonstrated that they will not provide the degree of care which promotes the healthy and orderly physical and emotional well-being of the child.

N.C.G.S. § 7A-289.23 provides that the

> district court shall have exclusive original jurisdiction to hear and determine any petition relating to termination of parental rights to any child who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition.

A petition to "terminate the parental rights of either or both parents," which institutes the action, may be filed by those persons or agencies listed in G.S. § 7A-289.24(1)-(7). *See In re Manus*, 82 N.C. App. 340, 342, 346 S.E.2d 289, 291 (1986) ("[section] limits the persons or agencies who may petition for termination of parental rights.") Following the filing of a petition, G.S. §§ 7A-289.30 and 7A-289.31 proscribe a two-stage proceeding: (1) the adjudicatory stage; and (2) the dispositional stage. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). During the adjudicatory phase, *see* G.S. § 7A-289.30, the trial court must determine whether the petitioner has met its burden to prove by clear, cogent, and convincing evidence the presence of grounds for termination as set forth in G.S. § 7A-289.32. *In re White*, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 470 (1986). At the dispositional stage, the court decides whether termination of parental rights is in the best interests of the child; if so, termination must then be ordered. G.S. § 7A-289.31; *see also In Re McMahon*, 98 N.C. App. 92, 94, 389 S.E.2d 632, 633 (1990).

Contrary to petitioners' proposition herein, however, nothing in the "statutorily established procedure for the termination of parental rights," *see Pierce*, 53 N.C. App. at 380, 281 S.E.2d at 203, allows for a unilateral "declaration of termination" by the parents, and we specif- ically decline to "add [such] right by imputation." *See id.* Moreover, we hold the Jurgas' attempt to relinquish their parental rights and responsibilities, *see Wells v. Wells*, 227 N.C. 614, 616, 44 S.E.2d 31, 33 (1947) (parental duty of support and maintenance), contravenes the statutorily prescribed scheme for termination of parental rights.

First, while G.S. § 7A-289.24 provides that "[e]ither parent" may institute an action seeking termination of the rights of the *other*, it expressly limits the persons and agencies who may petition for termination, *Manus*, 82 N.C. App. at 342, 346 S.E.2d at 291, and in no wise includes natural parents jointly seeking termination of their *own* parental rights. Moreover, strikingly absent in the record *sub judice* is evidence of the statutorily prescribed two-stage proceeding at which the *trial court*, and *not* the *parents*, resolves the issues of whether grounds for termination exist, and if so, whether termination would indeed be in the best interests of the child. *See White*, 81 N.C. App. at 85, 344 S.E.2d at 38; and *McMahon*, 98 N.C. App. at 94, 389 S.E.2d at 633. In sum, we agree with appellee-guardian *ad litem's* assessment that "[s]ince the parental rights of the Jurga's [sic] had not been terminated, they were still the natural guardians of the minor child, [and] therefore the Petition for Adjudication of Incompetence and Application for Appointment of Guardian was properly dismissed." *See* G.S. §§ 35A-1201(a)(6), 35A-1201(b)(1), and 35A-1203(a) (giving the Clerk of Superior Court jurisdiction to appoint a guardian for a minor only when the minor has no natural guardian, *i.e.* parent.) While not insensitive to Trey's circumstance and the dilemma faced by the Jurgas, we must follow established law. *See Roberts v. Young*, 120 N.C. App. 720, 731, 464 S.E.2d 78, 86 (1995) (this Court "is bound by the plain meaning of a statute where its language is clear and unambiguous," and our holdings "must remain consistent with any previous interpretations of a statute.")

Having determined the petition was properly dismissed on jurisdictional grounds, we decline to discuss appellants' remaining arguments.

Affirmed.

Judges MARTIN, John C. and McGEE concur.