PHILLIP WHITMAN AND WIFE, EVA WHITMAN, PLAINTIFFS v. WILLIAM "SONNY" KIGER AND WIFE, BEVERLY KIGER, DEFENDANTS

No. COA99-993

(Filed 18 July 2000)

**Child Support, Custody, and Visitation— support—minor parents—grandparents' liability**

　　The trial court erred by granting summary judgment for defendants in an action seeking retroactive and prospective child support from grandparents where the unemancipated minor children of plaintiffs and defendants became the biological parents of an infant, the infant resides with plaintiffs and their child, neither defendants nor their child contributed to the support of the infant, and plaintiffs brought this action for support. The plain meaning of N.C.G.S. § 50-13.4, coupled with the legislative intent, imposes primary responsibility for an infant born to unemancipated minors on the minors' parents. Although plaintiffs contend

that they are not liable under subsection (b) of the statute because they are not in loco parentis to the infant and have not assumed an obligation to support the infant in writing, that portion of the statute is directed only towards parties who may be subject to secondary liability pursuant to voluntary acts.

Judge WYNN dissenting.

Appeal by plaintiffs from order entered 12 July 1999 by Judge William Graham in Forsyth County District Court. Heard in the Court of Appeals 27 April 2000.

*Larry L. Eubanks, Esq. and Jerry D. Jordan, Esq., for plaintiff-appellants.*

*Morrow, Alexander, Tash, Long and Kurtz, by John F. Morrow, for defendant-appellees.*

SMITH, Judge.

Plaintiffs appeal the trial court's grant of summary judgment for defendants. We reverse.

Pertinent facts and procedural history include the following: Plaintiffs are the parents of Beth Whitman (Whitman), an unemancipated minor born 25 March 1982, and defendants are the parents of Chad Elliott Kiger (Kiger), an unemancipated minor born 22 August 1982. Whitman and Kiger are the biological parents of an infant (the infant) born 27 March 1998. The infant resides with Whitman and plaintiffs, and Whitman works to support the infant. Neither Kiger nor defendants have contributed to the support of the infant.

On 23 April 1999, plaintiffs instituted this action pursuant to N.C.G.S. § 50-13.4 (1995), seeking retroactive and prospective child support from Kiger and defendants. On 5 May 1999, defendants filed a Motion to Dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) (1999) (Rule 12(b)(6)), alleging plaintiffs had failed to state a claim upon which relief might be granted. Defendants also filed an Answer denying any responsibility for the infant's support, alleging they "never stood *in loco parentis* of [the infant] . . . [and] never assumed the obligation [to] support said child in writing or otherwise." Following a 7 July 1999 stipulation that defendants' Rule 12(b)(6) motion be heard as a Motion for Summary Judgment, the trial court entered an order 12 July 1999 granting summary judgment for defendants. Plaintiffs appeal.

Summary judgment is appropriate where "the pleadings, deposi-tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a mat-ter of law." N.C.G.S. § 1A-1, Rule 56(c) (1999). The movants can meet this burden in one of two ways:

> (1) by showing that an essential element of the opposing party's claim is nonexistent; or (2) demonstrating that the opposing party cannot produce evidence sufficient to support an essential ele-ment of the claim or overcome an affirmative defense which would work to bar his claim.

*Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 89, 464 S.E.2d 299, 300 (1995) (citing *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)). In ruling on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-movants. *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995).

In the case *sub judice*, the propriety of the trial court's grant of summary judgment in favor of defendants is controlled by this Court's interpretation of G.S. § 50-13.4(b). Construction of this sec-tion must be resolved by reference to well settled canons of statutory interpretation.

The principal goal of statutory construction is to give effect to the intent of the legislature. *Kaplan v. Prolife Action League of Greensboro*, 123 N.C. App. 720, 723, 475 S.E.2d 247, 250 (1996), aff'd, 347 N.C. 342, 493 S.E.2d 416 (1997). "The will of the legislature 'must be found from the [plain] language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.'" *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996) (quoting *State ex rel. N.C. Milk Comm'n v. National Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967)). "If the language of the statute is clear, this Court must imple-ment the statute according to the plain meaning of its terms." *Roberts v. Young*, 120 N.C. App. 720, 724, 464 S.E.2d 78, 82 (1995).

Section 50-13.4, allowing actions for the support of a child, pro-vides in pertinent part:

(a) Any parent, or any person, agency, organization or institution having custody of a minor child . . . may institute an action for the support of such child as hereinafter provided.

(b) In the absence of pleading and proof that the circumstances otherwise warrant, *the father and mother shall be primarily liable for the support of a minor child.* In the absence of pleading and proof that the circumstances otherwise warrant, *parents of a minor, unemancipated child who is the custodial or non-custodial parent of a child shall share this primary liability for their grandchild's support with the minor parent, the court determining the proper share, until the minor parent reaches the age of 18 or becomes emancipated. If both the parents of the child requiring support were unemancipated minors at the time of the child's conception, the parents of both minor parents share primary liability for their grandchild's support until both minor parents reach the age of 18 or become emancipated.* If only one parent of the child requiring support was an unemancipated minor at the time of the child's conception, the parents of both parents are liable for any arrearages in child support owed by the adult or emancipated parent until the other parent reaches the age of 18 or becomes emancipated. In the absence of pleading and proof that the circumstances otherwise warrant, any other person, agency, organization or institution standing *in loco parentis* shall be secondarily liable for such support. Such other circumstances may include, but shall not be limited to, the relative ability of all the above-mentioned parties to provide support or the inability of one or more of them to provide support, and the needs and estate of the child. The judge may enter an order requiring any one or more of the above-mentioned parties to provide for the support of the child as may be appropriate in the particular case, and if appropriate the court may authorize the application of any separate estate of the child to his support. However, the judge may not order support to be paid by a person who is not the child's parent or an agency, organization or institution standing *in loco parentis* absent evidence and a finding that such person, agency, organization or institution has voluntarily assumed the obligation of support in writing. The preceding sentence shall not be construed to prevent any court from ordering the support of a child by an agency of the State or county which agency may be responsible under law for such support.

G.S. § 50-13.4(a)&(b) (emphasis added).

Plaintiffs argue the defendants are primarily responsible for their infant grandchild because Kiger, their unemancipated minor child, is unable or unwilling to accept primary liability for the support of the infant. We agree.

The plain meaning of the above statutory language, coupled with the legislative intent, imposes primary responsibility for an infant born to unemancipated minors on the minors' parents (the infant's grandparents). A different construction would be contrary to the context and purpose of the statute.

G.S. § 50-13.4(b) reiterates the well established principle that parents carry primary responsibility for their minor children, regardless of whether they stand in *loco parentis* or decide not to accept a parental role in the child's life. *See* G.S. § 50-13.4(b) ("the father and mother shall be primarily liable for the support of a minor child"), and *Plott v. Plott*, 65 N.C. App. 657, 659-60, 310 S.E.2d 51, 53 (1983) ("both parents have equal support duties" under G.S. § 50-13.4), rev'd in part on other grounds, 313 N.C. 63, 326 S.E.2d 863 (1985).

G.S. § 50-13.4(b) further provides that the "parents of a minor, unemancipated child who is the custodial or noncustodial parent of a child *shall share* this primary liability for their grandchild's support *with* the minor parent . . . until the minor parent reaches the age of 18 or becomes emancipated." G.S. § 50-13.4(b) (emphasis added). This sharing of primary responsibility between the unemancipated minor and that minor's parents, reflects the general principle that an unemancipated minor continues to be the responsibility of his or her own parents until emancipated or reaching the age of majority. *See generally Alamance County Hosp., Inc. v. Neighbors*, 315 N.C. 362, 365, 338 S.E.2d 87, 89 (1986) ("a father has a duty to support his unemancipated minor children"), and N.C.G.S. § 35A-1201(a)(6) (1999) ("[m]inors, because they are legally incompetent to . . . give consent for most purposes, need responsible, accountable adults to handle property or benefits to which they are entitled. Parents are the natural guardians of the person of their [unemancipated] minor children"). *See also In re Jurga*, 123 N.C. App. 91, 94, 472 S.E.2d 223, 225 (1996). Accordingly, "[i]f both the parents of the child requiring support were unemancipated minors at the time of the child's conception, the parents of *both* minor parents *share primary liability* for their grandchild's support until both minor parents reach the age of 18 or become emancipated." G.S. § 50-13.4(b) (emphasis added).

**WHITMAN v. KIGER**

[139 N.C. App. 44 (2000)]

Additionally, while "the title of an act, although some evidence of legislative intent where the meaning of a statute is in doubt, cannot override, or otherwise limit, unambiguous language," *Bethania Town Lot Committee v. City of Winston-Salem*, 126 N.C. App. 783, 787, 486 S.E.2d 729, 732-33 (1997), aff'd, 348 N.C. 664, 502 S.E.2d 360 (1998), we hold the title given to G.S. § 50-13.4(b), "An Act To Require The Parents Of A Dependent Child Who Is The Parent Of A Dependent Child To Contribute To The Support Of Their Grandchild," 1995 N.C. Sess. Laws ch. 518, § 1, reflects the plain meaning and overall purpose of the statute.

Notwithstanding the plain meaning of the first portion of subsection (b) establishing primary liability, defendants contend they are not liable because they do not stand in *loco parentis* to the infant and have not assumed an obligation to support the infant in writing. In support of their argument, defendants rely on a final portion of subsection (b) which provides:

> However, the judge may not order support to be paid by a person who is not the child's parent or an agency, organization or institution standing in *loco parentis* absent evidence and a finding that such person, agency, organization or institution has voluntarily assumed the obligation of support in writing.

G.S. § 50-13.4(b). We find defendant's argument unpersuasive. Defendants have taken the above portion of subsection (b) out of context to impose a requirement that is not applicable to parents of unemancipated minors who have had a child. Defendants, as the parents of an unemancipated minor who fathered a child, are subject to primary liability for such infant because their unemancipated minor lacks the capacity to support the child.

Following the provisions of G.S. § 50-13.4(b) setting forth circumstances where primary liability for an infant may be imposed, section 50-13.4(b) then provides for the imposition of *secondary* liability under circumstances "other" than those previously addressed (*i.e.* primary liability of the parents or where applicable, the grandparents).

> In the absence of pleading and proof that the *circumstances otherwise warrant*, _any other person_, agency, organization or institution standing *in loco parentis* shall be *secondarily* liable for such support.

G.S. § 50-13.4(b) (emphasis added). Considering section 50-13.4(b) in its entirety, we hold the plain meaning of "any other person," is a reference to any person *other* than those who are primarily liable pursuant to the first portion of the subsection, *i.e.* the infant's parents or grandparents where the parents are unemancipated minors.

The phrase relied upon by defendants which absolves one from any liability if they do not stand in *loco parentis* or have not assumed such responsibility in writing, is directed only towards parties who may be subject to secondary liability, *i.e.* "any other person, agency, organization or institution standing in *loco parentis*," G.S. § 50-13.4(b), pursuant to voluntary acts. *See Shook v. Peavy*, 23 N.C. App. 230, 232, 208 S.E.2d 433, 435 (1974) ("person in *loco parentis*" is "one who has assumed the status and obligations of a parent without a formal adoption"). Thus, the portion of subsection (b) absolving a party from secondary liability is not applicable to defendants because Kiger, defendants' unemancipated minor child, is primarily liable for the infant and because he cannot or will not care for the infant, primary responsibility automatically shifts to defendants until Kiger is emancipated or reaches age eighteen.

If we were to adopt the interpretation of G.S. § 50-13.4 advocated by appellees, no grandparent could be required to contribute to the support of a child of a minor unemancipated child unless the grandparent "voluntarily assumed the obligation of support in writing." G.S. § 50-13.4(b). Obviously the General Assembly did not intend such an absurd result. For if a grandparent wanted to voluntarily assume the obligation, it could be done without the intervention of the courts. Adoption of this interpretation would effectively render the statute meaningless.

Based upon the foregoing analysis of G.S. § 50-13.4(b), we hold the infant *sub judice*, born to unemancipated minors, becomes the primary responsibility of defendants and plaintiffs, the unemancipated minors' parents and the infant's grandparents. Such reasoning is logical and in accordance with the plain meaning and overall objectives and purpose of G.S. § 50-13.4(b).

In his dissent, our esteemed colleague makes several references to grandparents' rights, or lack thereof, under present law. Though we are in basic agreement with his reasoning and believe that grandparents rights, such as visitation, should be dependent in part on obligations such as "support," we also believe these matters of important public policy and possibly constitutional law should be addressed by the General Assembly.

We reverse the trial court's order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Judge HORTON concurs.

Judge WYNN dissents in a separate opinion.

Judge WYNN dissenting.

I agree with Judge Graham's interpretation of N.C. Gen. Stat. § 50-13.4 (1995). Contrary to the majority opinion, I believe that the absurd result would be to hold grandparents primarily liable for grandchild support under N.C. Gen. Stat. § 50-13.4 (1995) because (1) the statute is ambiguous and (2) clearly, the Legislature did not intend for grandparents to be liable for grandchild support when they have no corresponding presumptive rights to visitation and custody of their grandchildren.[1] I dissent.

The terms of N.C. Gen. Stat. § 50-13.4 setting forth grandparents' obligations to support grandchildren conflict. One part of the statute provides that a parent of an unemancipated minor child who is the parent of a child shares primary liability for the grandchild if either of the parents were under 18 at the time of the child's conception until both minor parents reach the age of 18. Yet, another part provides that a judge may not enter an order requiring a person who is not the parent of child to pay support unless there is evidence that the person has voluntarily assumed the obligation of support in writing. Therefore, in a case like this one, where the grandparents have not assumed such written responsibility, it is not clear under the terms of the statute whether they share primary responsibility for the support of the child.

Under the Session Laws of 1995, the General Assembly added the statutory provision relating to a grandparent's primary liability for

---

1. Under the majority's interpretation, the amount of support to be paid by grandparents found "primarily" liable for grandchild support under N.C. Gen. Stat. § 50-13.4 would presumably be determined by assessing the grandparents' ability to pay under the Child Support Guidelines. It is reasonable to assume that support payments based on the grandparents' income would almost certainly be higher than payments based on the income of their minor child. And of course, in instances where the grandparents' income exceeds $180,000, the Child Support Guidelines would not apply; instead, the trial judge would be allowed to award an amount in excess of that allowed by the Guidelines.

support of a grandchild when either of the parents are unemancipated minors. Thereafter, in *Pott v. Pott*, 126 N.C. App. 285, 484 S.E.2d 822 (1997), this Court stated:

> [It] is beyond question this jurisdiction will not impose the burden of child support on a non-biological parent who has not voluntarily assumed such an obligation. *See Duffey v. Duffey*, 113 N.C. App. 382, 384-385, 438 S.E.2d 445, 447 (1994); *State v. Ray*, 195 N.C. App. 628, 629, 143 S.E. 216, 216 (1928). Indeed, the General Assembly has expressly recognized "the [trial] judge may not order support to be paid by a person who is not the child's parent . . . absent evidence and a finding that such person . . . has voluntarily assumed the obligation of support in writing." N.C. Gen. Stat. § 50-13.4(b) (1995).

*Id.* at 290, 484 S.E.2d at 826.

As this Court recognized in *Pott*, the plain language of N.C. Gen. Stat. § 50-13.4 shows that our Legislature intended to establish that in this State, the duty of support of a child can be imposed upon a nonparent only when that person has voluntarily assumed this obligation. Indeed, it would be absurd to hold that grandparents must provide support for grandchildren without any presumptive rights of custody, care and control of the child in their favor.[2] *See Duffey*, 346 N.C. at 83, 484 S.E.2d at 537.

In North Carolina, grandparents have very limited rights to sue for custody or visitation of a grandchild, and they do not start with the presumption that they should be entitled to custody or visitation, as do natural parents. Although our State no longer follows the common law rule that grandparents have *no* custody or visitation rights to their grandchildren, our Legislature has determined that grandparents may seek custody or visitation in only the few limited circumstances provided by N.C. Gen. Stat. §§ 50-13.1(a), 50-13.2A, 50-13.2(b1), and 50-13.5(j). (For a more detailed description of these statutes, *see Montgomery v. Montgomery*, 136 N.C. App. 435, 524 S.E.2d 360 (2000).) In general, grandparents still have no automatic

---

2. It should be noted that while the loss of custody does not relieve a parent of his or her duty to support a child, N.C. Gen. Stat. § 50-13, all natural parents have a constitutionally protected paramount right to custody, care and control of their child. *See Peterson v. Rogers*, 337 N.C. 397, 445 S.E.2d 901. Only a showing that a parent is unfit or has neglected the child's welfare will result in a loss of these rights. *See id. See also Troxel v. Granville*, —— U.S. ——, 120 S. Ct. 2054 (2000) (holding that parents have a fundamental right to make decisions concerning the custody, care and control of their children).

right to custody or visitation with grandchildren, and there is no provision for custody or visitation rights even when a grandparent must assume primary financial responsibility for a grandchild. ·

Further, the consent of grandparents who do not have custody of a grandchild is not required before a parent may give the grandchild up for adoption. Moreover, it would appear that grandparents do not have this right even in a case like the one *sub judice* in which the majority holds that the grandparents are primarily liable for their grandchild's support.

If a grandparent does receive custody of a grandchild, he or she stands in *loco parentis* to the grandchild and has voluntarily assumed the obligation of support. But no right to custody is recognized for grandparents in our State solely on the basis that a parent of the grandchild is a unemancipated minor. Therefore, without the right to custody it would be unreasonable to impose the obligation of support upon a grandparent simply because his or her child is an unemancipated minor who has parented a child. *See Price v. Howard,* 346 N.C. 68, 84, 484 S.E.2d 528, 537 (1997) (holding that the right to custody should accompany the duty of support under N.C. Gen. Stat. § 50-13.4).

Since N.C. Gen. Stat. § 50-13.4 is an ambiguous statute, I would defer to our Legislature to set forth whether grandparents should be liable for grandchild support when they have no corresponding presumptive rights to visitation and custody of their grandchildren.

Accordingly, I dissent.