IN RE J.J.L., E.F.L., S.A.L.

[170 N.C. App. 368 (2005)]

IN RE: J.J.L., E.F.L., S.A.L.

No. COA04-1025

(Filed 17 May 2005)

**Child Abuse and Neglect— permanency planning—concurrent adoption and reunification plans**

A concurrent plan for the adoption of neglected children and reunification with their parents did not conflict with the requirement of N.C.G.S. § 7B-907(a) that permanent placement be obtained within a reasonable time and was affirmed where the court found at a permanency planning hearing that reunification would not then be in the best interests of the children, but that the mother had complied with court orders and that reunification should remain a part of the plan. The plain meaning of the relevant statutory language provides the courts with the option of implementing reunification efforts concurrently with other permanent placement plans, including adoption, and the plan in this case complies with statutory requirements. N.C.G.S. § 7B-507(d).

Appeal by respondent-father from order entered 29 January 2004 and corrected order entered 25 March 2004 by Judge L. Suzanne Owsley in Burke County District Court. Heard in the Court of Appeals 23 March 2005.

*Leslie C. Rawls for respondent.*

*Stephen M. Schoeberle for petitioner Burke County Department of Social Services.*

*Attorney Advocate Mary R. McKay for J.J.L., E.F.L., and S.A.L.*

BRYANT, Judge.

E.L.[1] (respondent) appeals from a permanency planning order continuing reunification efforts and adopting a concurrent plan of adoption. For the reasons herein discussed, we affirm the order of the court.

*Facts*

On or about 29 March 2000, Burke County Department of Social Services (DSS) filed petitions alleging that the three children who are

---

1. Initials have been used throughout to protect the identity of the juveniles.

the subject of this appeal were neglected. The children were thereafter adjudicated neglected.

On 29 January 2004, a permanency planning hearing was conducted in Burke County District Court with the Honorable L. Suzanne Owsley presiding. Reports from both the Guardian *ad litem* (GAL) and DSS recommended termination of any reunification efforts as being in the best interest of the children and that the court adopt a plan of adoption. The court found that reunification with the parents would currently not be in the best interest of the children, but because of the mother's compliance with court orders, reunification was to remain part of the concurrent plan, along with adoption. The court entered a permanency planning order adopting concurrent plans of reunification and adoption. Respondent-father appeals[2].

---

The sole issue before this Court is the proper interpretation of N.C. Gen. Stat. § 7B-507(d); specifically, whether the provisions allowing a plan of adoption to be made concurrently with a plan of reunification conflict with the statutory requirement that a permanent placement plan "achieve a safe, permanent home for the juvenile *within a reasonable time*." N.C.G.S. § 7B-907(a) (2003) (emphasis added)[3].

" 'The primary rule of statutory construction is that the intent of the legislature controls the interpretation of the statute.' " *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (citation omitted). " 'The will of the legislature must be found from the plain language of the act, its legislative history and the circumstances surrounding adoption.' " *Whitman v. Kiger*, 139 N.C. App. 44, 46, 533 S.E.2d 807, 808 (2000) (citation omitted), *aff'd*, 353 N.C. 360, 543 S.E.2d 476 (2001). "If the language of the statute is clear, this Court must implement the statute according to the plain meaning of its terms." *Roberts v. Young*, 120 N.C. App. 720, 724, 464 S.E.2d 78, 82 (1995).

Respondent concedes in his brief that concurrent plans of reunification and adoption are authorized by N.C. Gen. Stat. § 7B-507(d) but argues that in this case, concurrent plans do not comply with the requirement of N.C. Gen. Stat. § 7B-907(a) that permanent placement be achieved within a reasonable period of time. We disagree.

---

2. Respondent-mother does not appeal.

3. Respondent failed to address assignment of error number 2. Pursuant to N.C. R. App. P. 28(b), this assignment of error is therefore deemed abandoned.

IN RE J.J.L., E.F.L., S.A.L.

[170 N.C. App. 368 (2005)]

N.C. Gen. Stat. § 7B-907 provides in pertinent part:

(a) . . . The purpose of the permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable time. . . .

. . .

(c) At the conclusion of the hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time. . . .

If the court continues the juvenile's placement in the custody or placement responsibility of a county department of social services, *the provisions of G.S. 7B-507 shall apply to any order entered under this section.*

N.C.G.S. § 7B-907(a), (c) (2003) (emphasis added).

N.C. Gen. Stat. § 7B-507 provides:

(a) An order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order:

(1) Shall contain a finding that the juvenile's continuation in or return to the juvenile's own home would be contrary to the juvenile's best interest;

(2) Shall contain findings as to whether a county department of social services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined under subsection (b) of this section that such efforts are not required or shall cease;

(3) Shall contain findings as to whether a county department of social services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile[.]

. . .

(d) In determining reasonable efforts to be made with respect to a juvenile and in making such reasonable efforts, the juvenile's health and safety shall be the paramount concern. *Reasonable efforts to preserve or reunify families may be made concur-*

**IN RE J.J.L., E.F.L., S.A.L.**

[170 N.C. App. 368 (2005)]

*rently with efforts to plan for the juvenile's adoption,* to place the juvenile with a legal guardian, or to place the juvenile in another permanent arrangement.

N.C.G.S. § 7B-507(a),(d) (2003) (emphasis added). The plain meaning of the above statutory language provides courts with the option of implementing other permanent placement plans, including adoption, concurrently with reunification efforts. "Where the language of the statute is clear, the courts must give the statute its plain meaning." *Frye Reg'l Med. Ctr., Inc. v. Hunt,* 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999).

In addition, the concurrent plan of reunification and adoption as ordered in this case complies with N.C. Gen. Stat. § 7B-907(b) which states:

(b) . . . At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

N.C.G.S. § 7B-907(b) (2003).

In its correction to the original order, the court made findings regarding the possibility of the children returning home within six months, where the children were to be placed during that time, and whether adoption should be pursued and any barriers to adoption. The court's relevant findings are as follows:

(6) Due to the juveniles' fears, it is not possible to return the juveniles to their parents immediately or within 6 months. Reunification if it is to occur will be the result of a long process.

(7) The juveniles remain placed with [JJ], who previously was married to Mr. L's stepbrother, and they appear to be doing well there. No other appropriate relatives are available for possible placement. [JJ] would like to adopt the juveniles should they become free for adoption. The only barrier to adoption is that the parents' parental rights have not been terminated.

Therefore, the court made written findings concerning relevant factors as required by N.C. Gen. Stat. § 7B-907(b). Further, by adopting a concurrent placement plan of reunification and adoption the court complied with the provisions of N.C. Gen. Stat. § 7B-507 as required by N.C. Gen. Stat. § 7B-907(c) ("If the court continues the juvenile's placement in the custody or placement responsibility of a county department of social services, *the provisions of G.S. 7B-507 shall* apply to any order entered under this section."). N.C.G.S. § 7B-907(c) (emphasis added).

N.C. Gen. Stat. § 7B-507, reiterates the well established principle that the main factor in determining placement issues is the welfare of the child. *See* N.C.G.S. § 7B-507(d) ("the juvenile's health and safety shall be the paramount concern"); *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984) ("the best interest of the child is the polar star"); *Wilson v. Wilson*, 269 N.C. 676, 678, 153 S.E.2d 349, 351 (1967) ("welfare of the child is always to be treated as the paramount consideration"). Here, the court concluded that the best interest of the children would not be served by returning the children to either parent. Instead, the court concluded that it would be best for the children to remain in their current placement with JJ. However, because the mother had attended counseling, was employed, submitted to random drug testing and was not involved in inappropriate or criminal activity, the court continued reunification efforts despite the recommendations of DSS and GAL.

As for respondent, the court found that he had not fully complied with court orders. Respondent had not completed either substance

abuse treatment or psychological or anger management assessments. Also, respondent submitted to a drug test two days after it was requested.

Respondent's contention that the concurrent plan of reunification and adoption makes the responsibilities of the parents and DSS unclear is without merit. The court in its order set out specifically what each party was to do in the effort to establish permanent placement for the children. The court ordered that respondent continue his NA/AA classes, submit to two (2) random drug screening tests before the next hearing, provide current contact information to DSS, comply with the recommendations of his psychological evaluation and enroll within 14 days in an anger management or domestic violence program and attend every scheduled session. The mother was to continue cooperation with DSS. Also, the court ordered the children to continue therapy and allowed limited supervised visitation with the mother. Custody was continued with DSS and placement with JJ was specifically approved. The order provided for respondent, the mother, and DSS to move towards reunification. Also, the order established the terms for DSS to move towards adoption. The parties' responsibilities were clearly stated in the order.

Furthermore, the concurrent plan did not place the children in "limbo" as respondent claims. The children were to remain with JJ, with whom they had been currently placed. JJ stated she was willing to adopt the children and DSS was ordered to move towards adoption creating at least one option that provided stability for the children. Continuing placement with JJ, a person the children were familiar with, gave some sense of permanency to the children.

It is a forgone conclusion that concurrent placement plans are allowed under the statute as evidenced by this Court affirming numerous cases adopting concurrent placement plans. *See In re Derreberry*, No. COA02-1238, 160 N.C. App. 252, 2003 N.C. App. LEXIS 1763 (unpublished opinion) (concurrent plan of placement with relative and adoption or reunification affirmed); *In re Hensley*, No. COA02-1371, 157 N.C. App. 716, 2003 N.C. App. LEXIS 969 (unpublished opinion) (concurrent plan of guardianship and adoption affirmed); *In re Brown*, No. COA-03-346, 162 N.C. App. 547, 2004 N.C. App. LEXIS 214 (unpublished opinion) (affirming concurrent plan of reunification, termination of parental rights, and adoption). In *In re Brown*, this Court held "the . . . order . . . establishing a permanent care plan of reunification with respondents with a concurrent plan of

termination of parental rights and adoption did not violate the Juvenile Code's purposes and policies." *Id.*

Based on the foregoing, we hold that a concurrent permanent placement plan of reunification and adoption as allowed under N.C. Gen. Stat. § 7B-507(d) does not conflict with the requirement of N.C. Gen. Stat. § 7B-907(a) to obtain permanent placement within a reasonable period of time.

Affirmed.

Judges McGEE and STEELMAN concur.